UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X
                                  :
CATRIONA COLLINS,                 :
                                  :
                 Plaintiff,       :    04 CV 8983(KMW)(MHD)
                                  :    <u>Opinion and Order</u>
       -against-                  :
                                  :
COHEN PONTANI LIEBERMAN & PAVANE, :
                                  :
                 Defendant.       :
---------------------------------X

WOOD, U.S.D.J.:

    Plaintiff Catriona Collins ("Plaintiff") brings this action

against Defendant Cohen Pontani Lieberman & Pavane ("CPLP" or

"Defendant"), alleging (1) employment discrimination and

retaliation in violation of Title VII of the Civil Rights Act of

1964, the New York State Human Rights Law, and the New York City

Administrative Code; and (2) breach of contract.  Specifically,

Plaintiff alleges that CPLP unlawfully discriminated against her

on the basis of sex by (1) denying her promotions; (2) denying

her salary and billing rate increases; (3) failing to assign her

adequate work; and (4) terminating her employment.[1]  Plaintiff

_____

    [1] Plaintiff's Opposition Memorandum also describes an
incident where a CPLP partner did not assign a paralegal to a
case managed by Plaintiff.  To the extent that Plaintiff asserts
a separate discrimination claim on the basis of this incident,
the Court refuses to consider it.  Plaintiff did not discuss the
paralegal incident in her Complaint or her Equal Employment
Opportunity Commission charge.  Because Defendant received notice
of this claim only after Plaintiff filed her opposition to
summary judgment, the Court does not consider it.  See <u>Kearney v.</u>

                              1

also alleges that CPLP terminated her employment in retaliation for her complaints about sex discrimination. Finally, Plaintiff alleges that CPLP breached its contract with her, by failing to pay her a 20 percent commission on matters she originated or introduced to CPLP.

Defendant moves for partial summary judgment with respect to Plaintiff's employment discrimination and retaliation claims.[2] Defendant argues that: (1) several of Plaintiff's claims are time-barred; (2) Plaintiff fails to establish a prima facie case of discrimination or retaliation with respect to any of her claims; and (3) Plaintiff does not provide any evidence that CPLP's proffered explanations for its actions are a pretext for unlawful discrimination or retaliation.

For the reasons stated below, Defendant's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.

## I. Factual Background

Unless otherwise noted, the following facts are undisputed and are derived from the parties' Local Civil Rule 56.1 statements, affidavits, and other submissions.[3]

---

County of Rockland, 373 F. Supp. 2d 434, 440-41 (S.D.N.Y. 2005).

[2] Defendant does not move for summary judgment with respect to Plaintiff's contract claim.

[3] Plaintiff and Defendant each argue that the other party did not comply with Local Rule 56.1. See Local Rule 56.1 (requiring that the movant for summary judgment submit a "short and concise" statement, in numbered paragraphs, of the material facts for

A. <u>The Parties</u>

CPLP is a law firm located in New York City, specializing in intellectual property law ("IP").  CPLP's practice areas include patent, trademark, and copyright litigation; prosecution of

---

which there is no genuine issue to be tried, and requiring the opponent to respond to each numbered paragraph and, if necessary, submit additional material facts that are in dispute).  The Court finds that neither party's 56.1 Statement complies with the Local Rules, because each 56.1 Statement (1) contains legal arguments, and (2) makes more than one factual assertion per numbered paragraph.  However, in its discretion, the Court will consider Defendant's motion for partial summary judgment despite the parties' technical violation of the local rules.  <u>See</u> <u>Holtz v.</u> <u>Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir. 2001) ("[A] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

Defendant also argues that the Court should grant it summary judgment because Plaintiff's 56.1 Statement (1) cites to a "self-serving" declaration by Plaintiff; and (2) contradicts Plaintiff's sworn deposition testimony. (<u>See</u> Reply 2-3.) Defendant's arguments are without merit.  First, Plaintiff's declaration is admissible evidence, and it is for a jury to determine whether Plaintiff's allegations are true or merely self-serving.  Second, Defendant does not establish any contradiction between Plaintiff's 56.1 Statement and her deposition testimony.  In the portions of the 56.1 Statement cited by Defendant, Plaintiff asserts that the CPLP partners consistently failed to assign her sufficient work. (<u>See</u> Pl. Ctr. 56.1 ¶¶ 4, 11.)  Defendant argues that this assertion conflicts with Plaintiff's deposition testimony, where she cited only a few instances where CPLP partners assigned work <u>away</u> from her to other associates.  This testimony does not establish a contradiction, because Plaintiff may have had insufficient work for other reasons, including because the CPLP partners failed to assign her sufficient work in the first instance.  The Court further notes that assuming <u>arguendo</u> that the example cited by Defendant does represent a contradiction, this contradiction would not warrant disregarding Plaintiff's entire 56.1 Statement, as urged by Defendant.  Rather, the Court would disregard only the specific allegation that contradicts Plaintiff's deposition testimony.  <u>See</u> <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001).

patent applications; copyright registration; and related opinion work.[4] (See Def. 56.1 ¶ 1.)

Plaintiff is a female intellectual property litigator, who joined CPLP in June or July 1997 as a litigation associate.[5] (See Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.)  Prior to joining CPLP, Plaintiff worked for nine years at another law firm specializing in patents and trademarks.  (See Def. 56.1 ¶ 5.)  On September 18, 2003, CPLP terminated Plaintiff's employment.  (See Def. 56.1 ¶ 13.)

On April 21, 2004, Plaintiff filed a sex discrimination and retaliation charge with the Equal Employment Opportunity Commission ("EEOC") against CPLP.  On August 13, 2004, the EEOC issued Plaintiff a Notice of Right to Sue.  Plaintiff filed a complaint in this Court on November 12, 2004.  (See Def. 56.1 ¶¶ 17-18.)

B. Salary, Billing Rate, and Promotion Decisions

Plaintiff alleges that CPLP's billing and salary cycle is October-September.  (See Pl. Ex. CC; Pl. Decl. ¶¶ 40, 67.)  CPLP provides annual employee performance reviews in October, at the

---

[4] The parties dispute whether CPLP's practice "is based in general/industrial chemistry, physics, and electrical/mechanical engineering."  (See Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1.)

[5] Plaintiff is not admitted to practice before the United States Patent and Trademark Office ("USPTO") and is therefore not qualified to prosecute patent applications.  (See Pavane Decl. ¶ 8.)

start of this cycle.  As described by Plaintiff, during these reviews, the CPLP partners inform employees about salary increases for the upcoming October-September cycle, as well as about promotion decisions.[6]  (See, e.g., Pl. Decl. ¶¶ 28, 38, 67-68, 136.)

Plaintiff alleges that she received positive performance evaluations and significant salary increases during 1997 and 1998, her first two years at CPLP.  (See Pl. Ctr. 56.1 ¶ 2.)[7] She alleges that her first negative interaction with a CPLP partner occurred in or around July 1999, when a partner, Mr. Pavane ("Pavane"), informed her that he "could not talk to her" and was uncomfortable with her.[8]  (Id.)  This incident occurred at about the time Plaintiff began to originate business for CPLP. (Id.)

At her next annual review in October 1999, CPLP again awarded Plaintiff a raise, but did not raise Plaintiff's billing rate for clients.  (See Pl. Decl. ¶ 28; Pl. Ex. CC.)  CPLP's then-managing partner, Mr. Cohen ("Cohen"), also informed Plaintiff that she would never become a partner in the firm

_____

[6] The partners present at Plaintiff's annual review varied each year.  (See, e.g., Pl. Decl. ¶¶ 28, 44.)

[7] CPLP did not promote Plaintiff during this period.  The record before the Court does not indicate whether CPLP raised Plaintiff's billing rate during this period.  (See Pl. Ex. CC.)

[8] Pavane became CPLP's managing partner in 2000. (See Pavane Decl. ¶ 1.)

because she made the partners "uncomfortable," and because the partners prided themselves on being "collegial" and like a "family." (Id.)

At Plaintiff's October 2000 review, CPLP denied Plaintiff both a salary increase and an increase in her billing rate for clients. CPLP also did not promote her to partner. (See Pl. Ex. CC.)

At Plaintiff's October 2001 review, CPLP again denied Plaintiff a salary increase and a promotion to partner. (See Pl. Ex. CC.) However, CPLP raised Plaintiff's billing rate immediately following the review. (See Pl. Decl. ¶50.) During her review, Plaintiff complained to the partners that she believed she was being discriminated against on the basis of sex. (See Pl. Ctr. 56.1 ¶ 8.) In his deposition, Pavane stated that he investigated this complaint by "looking in my soul and saying am I discriminating against this woman? No. And I checked with my other partners and no one felt that anybody in the firm had discriminated against her." (See Pavane Dep. 236.) This "investigation" did not comply with CPLP's discrimination policy as described by Pavane in his deposition.[9]

---

[9] During his deposition, Pavane tesified that CPLP's procedures for investigating sexual harassment claims also apply to allegations of sex discrimination. (See Pavane Dep. 235.) These procedures require a supervisor to report allegations to the Office Manager, and to maintain a written record of how the complaint was investigated and resolved. (See CPLP Sexual Harassment Policy 2-3, 5 (Nov. 9, 1998), Pl. Ex. Q.) Pavane did

At Plaintiff's October 2002 performance review, CPLP gave Plaintiff a $10,000 raise and an increase to her billing rate, and Plaintiff alleges that she also received a positive evaluation of her work.  (See Pl. Decl. ¶ 68; Pl. Ex. CC.) During her review, Plaintiff asked Thomas Pontani ("Pontani"), one of CPLP's named partners, what, if any, objections he had to promoting her to a non-equity partner.  Pavane interrupted, instructed Pontani not to respond, and terminated the review. Plaintiff alleges that Pavane later reprimanded her for raising the topic of promotion at her review, and stated that the partners thought she was "difficult" and that she had not expressed enough gratitude for her raise.  (See Pl. Decl. ¶¶ 69-70.)

CPLP terminated Plaintiff's employment prior to her October 2003 review.  However, Plaintiff cites a CPLP spreadsheet produced in discovery that lists salary and billing rates for the October 2003-September 2004 cycle.  Plaintiff argues that this spreadsheet indicates that prior to her termination, CPLP had already decided not to raise her salary for the following year or promote her to partner.  (See Pl. Decl. ¶ 136; Pl. Ex. CC.)

Plaintiff alleges discriminatory treatment with respect to CPLP's salary, billing rate, and promotion decisions, arising from the following actions: (1) CPLP's failure to promote

not indicate that he followed these procedures.

Plaintiff to partner in 1997-2003; (2) CPLP's failure to raise Plaintiff's salary in 2000, 2001, and 2003; and (3) CPLP's failure to raise Plaintiff's billing rate in 1999 and 2000.

C. Failure to Assign Adequate Work to Plaintiff

CPLP requires that their litigators meet an annual billable hours requirement of 1800 hours. (Pavane Decl. ¶ 13.)  It is undisputed that Plaintiff did not meet this requirement in 1997-2001 or in 2003.[10]  (See Def. 56.1 ¶ 9; Pl. 56.1 ¶ 9.)  However, Plaintiff alleges that she did not meet the billable hour requirement during these periods because CPLP's partners (1) refused to assign sufficient work to her; and (2) transferred work from her to other associates.  (See, e.g., Pl. Ctr. 56.1 ¶¶ 4, 11; Pl. Decl. ¶¶ 95-99.)  Plaintiff alleges that the CPLP partners stopped regularly assigning work to her in early 2000, and that this treatment was due to discrimination (the "work assignment claim").[11]  (See Pl. Decl. ¶¶ 32-33.)

D. Plaintiff's Termination

CPLP terminated Plaintiff's employment on September 18, 2003.  The following events leading up to Plaintiff's termination

---

[10] The parties dispute whether Plaintiff met this requirement in 2002.  (See Def. 56.1 ¶ 9; Pl. 56.1 ¶ 9.)

[11] However, Plaintiff alleges that during the October 2001-September 2002 cycle, the CPLP partners assigned her sufficient work to meet CPLP's billable hours requirement.  Plaintiff asserts that the partners gave her more work during this period in response to her  October 2001 complaint about sex discrimination. (See Pl. 56.1 ¶ 9.)

are undisputed.  On September 16, 2003, Plaintiff sent an email to the CPLP partners, complaining that "all the women litigators in this firm, regardless of their level of experience or talent, have been relegated to non-partnership track support roles, thus limiting their career development as well as their ability to undertake substantive trial work."  (See Pl. Ex. JJ.)

The following day, on September 17, 2003, Pavane sent an email to Plaintiff, expressing concern that she had bypassed CPLP's procedure for docketing papers, and that she had failed to obtain partner approval on various prebills.  (See Pl. Ex. JJ.) On September 18, 2003, Plaintiff sent an email in reply to Pavane, which stated, inter alia, that Plaintiff had "good reasons" for bypassing the office procedures because CPLP paralegals failed to follow them.[12] (See Pl. Ex. MM.)  Pavane sent Plaintiff a reply email that stated, "[b]ottom line is you should not alter our procedures without notifying a partner, regardless of how 'justified' you think you are," and asked Plaintiff to confirm that she would not violate CPLP's procedures.  (See Pl. Ex. NN.)  Following this email exchange, Plaintiff sent two additional emails, one to Pavane and one directly to the CPLP paralegals copied to Pavane, complaining

---

[12] Plaintiff also complained in this email that the CPLP partners had shown "complete and utter indifference" to her work, and that she "had every [reason] to believe that none of you gave a hoot what I did!"  (See Pl. Ex. MM.)

that the paralegals had not followed CPLP procedures with respect to her case.[13]

That same day, Pavane informed Plaintiff that he and the other CPLP partners had decided to terminate her employment. Pavane did not give Plaintiff a reason for her termination. (See Pl. Decl. ¶ 126.) Plaintiff alleges that she was fired due to discrimination and in retaliation for her September 16, 2003 email. (See Pl. Opp'n 17-19.) CPLP alleges that it terminated Plaintiff due to her failure to follow CPLP procedures and her subsequent emails to Pavane and the CPLP paralegals. (See Def. Reply 9.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[13] Plaintiff's email to Pavane stated, "Please confirm that (1) I have the firm's assurance that the partners will instruct the paralegals to apply the firm's alleged procedures to my case . . . and (2) that I will no longer be subjected to being informed by your paralegals that 'You don't know what you are doing' . . . and the like. If you do that then perhaps we won't have a problem." (See Pl. Ex. OO.) Plaintiff's email to the paralegals described the CPLP procedures at issue and stated that "I have no problem with this if I have the assurance of the partners and paralegals that [Plaintiff's] case will henceforth be treated in accordance with the procedures which are apparently applied to cases which the partners have brought into the firm." She further instructed the paralegals about behavior she "would not tolerate." (See Pl. Ex. QQ.)

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007). "[S]ubstantive law will identify which facts are material," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and an issue of "material fact is 'genuine[ ]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.; Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003). All ambiguities must be resolved, and all inferences drawn, in favor of the non-moving party. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001).

However, "[a] non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A non-moving party "'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [her] version of the events is not wholly fanciful.'" Id. (quoting Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004)). Thus, a non-moving party "must 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)).

B. Statute of Limitations

11

Defendant raises a statute of limitations defense to several of Plaintiff's claims. Before turning to the merits of Plaintiff's claims, the Court therefore considers whether Plaintiff's Title VII, state, and city claims are time-barred.

1. Title VII Claims

a. Legal Standard

A Title VII claim is "time-barred if the plaintiff, after filing a charge with an appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'" Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133-34 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-5(e)(1)).[14] There is a "narrow exception" to the Title VII limitations period, however, "when an otherwise time-barred claim is part of a 'continuing violation,'" and at least one discriminatory act falls within the limitations period. Blake v. Bronx Lebanon Hosp. Ctr., No. 02 Civ. 3827, 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003).[15]

The Supreme Court clarified the scope of this exception in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101

_____

[14] Although a shorter time period applies in certain circumstances, see 42 U.S.C. § 2000e-5(e)(1), Defendant assumes that the longer 300-day time period applies in this action. The Court therefore applies the 300-day time period.

[15] This exception applies to plaintiffs who "ha[ve] experienced a continuous practice and policy of discrimination." Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004) (internal quotation marks and citation omitted).

(2002).  In Morgan, the Supreme Court held that the continuing

violation doctrine does not apply to "discrete discriminatory

acts . . . , even when they are related to acts alleged in timely

filed charges."  Id. at 113.  In contrast, the continuing

violation exception does apply to "a series of separate acts that

collectively constitute one 'unlawful employment practice,'" such

as the acts underlying a hostile work environment claim.  Id. at

117.  Acts underlying a hostile work environment claim differ

from discrete acts because a hostile work environment claim is

"based on the cumulative effect of individual acts," id. at 115,

while "discrete acts" each constitute a "separate actionable

'unlawful employment practice,'" id. at 114.  "Discrete" acts

include "termination, failure to promote, denial of transfer, or

refusal to hire."  Id.

### b. Analysis

Plaintiff filed her EEOC claim on April 21, 2004.  Thus,

unless the continuing violation exception applies, any Title VII

claims premised on acts that occurred prior to June 26, 2003 are

time-barred.  See 42 U.S.C. § 2000e-5(e)(1));  Elmenayer, 318 F.3d

at 134.  The following claims fall outside this 300-day period:

(1) CPLP's failure to promote Plaintiff from 1997-2002; (2)

CPLP's failure to raise Plaintiff's salary at her performance

reviews in 2000 and 2001; (3) CPLP's failure to increase

Plaintiff's billing rate at her performance reviews in 1999 and

2000; and (4) CPLP's failure to provide Plaintiff with adequate work prior to June 26, 2003.

Plaintiff argues that each of these claims falls under the continuing violation exception.  The Court concludes that Plaintiff's promotion, salary, and billing rate claims are discrete acts that do not fall under the continuing violation exception.  However, Plaintiff's work assignment claim does constitute a continuing violation.

"Morgan is perfectly clear that when an employee alleges 'serial violations,' i.e., a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation."  Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162, 2175 (2007).  Each of Plaintiff's promotion, salary, and billing rate claims are separately actionable.  Accordingly, the Court concludes that these claims do not fall under the continuing violation exception.[16]  See

---

[16] Plaintiff argues that the continuing violation exception applies because CPLP's multiple discriminatory acts indicate that it had an ongoing policy of discrimination.  See Washington, 373 F.3d at 317 ("[I]f a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.") (internal quotation marks and citation omitted).  This argument is unpersuasive. Plaintiff points to no explicit CPLP policy, and makes only conclusory assertions that Defendant's discrete discriminatory acts resulted from an underlying policy.  These allegations are insufficient to establish a continuing violation.  See Alungbe v. Bd. of Trs. of Conn. State Univ., 283 F. Supp. 2d 674, 681 (D. Conn. 2003).

Morgan, 536 U.S. at 114 (holding that failure to promote is a discrete act); Ledbetter, 127 S. Ct. at 2165 (holding that pay-setting decisions are discrete acts).

In contrast, Plaintiff's work assignment claim is analogous to the hostile work environment claim discussed in Morgan, and therefore falls under the continuing violation exception. Plaintiff alleges that the CPLP partners first began allocating insufficient work to her in early 2000 (see Pl. Decl. ¶¶ 32-33), and she presents multiple examples from 2000 through 2003 of CPLP partners (1) reassigning work from her, (2) denying her requests for work, and (3) conceding that they were not providing her with adequate work. (See, e.g, Pl. Decl. ¶¶ 33, 35-36, 39, 44, 61, 76-79; Pl. Ex. E, P, W.)[17] Plaintiff alleges that collectively, these acts harmed her by leaving her with insufficient work, which affected her opportunities for salary increases and promotions. (See Pavane Decl. ¶ 13.) Thus, like a hostile work environment claim, Plaintiff's work assignment claim is "based on the cumulative effect of individual acts," Morgan, 536 U.S. at 115, which "collectively constitute one [allegedly] unlawful employment practice," id. at 117; see also Bascom v. Fried, No. 07 Civ. 677, 2008 WL 905210, at *4 (E.D.N.Y. Mar. 31, 2008). Accordingly, the Court concludes that Plaintiff has alleged a

_____

[17] Plaintiff's allegation that she did not receive adequate work is further supported by her billing records, which were consistently low. (See Pavane Decl. ¶ 13.)

continuing violation beginning in 2000.[18]  Because Plaintiff

alleges that CPLP's failure to assign her sufficient work

continued into the limitations period, (see Pl. Decl. ¶ 78-79),

Plaintiff's work assignment claim is not time-barred.

Thus, the Court concludes that the following Title VII

claims are time-barred, and grants CPLP summary judgment with

respect to these claims: (1) CPLP's failure to promote Plaintiff

at her performance reviews in 1997-2002; (2) CPLP's failure to

raise Plaintiff's salary at her performance reviews in 2000 and

2001; and (3) CPLP's failure to increase Plaintiff's billing rate

at her performance review in 2000.  The Court concludes that

Plaintiff's Title VII work assignment claim is not time-barred.

---

[18] The Court notes that in order to constitute a continuing violation, Defendant's discriminatory acts must be sufficiently continuous in time to establish a "continuum of discrimination." See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998).  The Court concludes that the specific examples cited by Plaintiff, coupled with the evidence that her billing rate was consistently low, is sufficient to meet this standard.  In particular, Plaintiff's allegation that she received sufficient work to meet her minimum billing requirement in the October 2001-September 2002 cycle does not defeat her claim.  First, considering this evidence in the light most favorable to Plaintiff, Plaintiff still may have been harmed by receiving less work than she would have if she were male.  (See Pl. Decl. ¶ 61 (alleging that in August 2002, Pavane reassigned work away from her and refused her request for additional work); Talmadge Decl. ¶ 14 (stating that a billing rate above the minimum is generally required for partnership consideration).)  Second, even if CPLP did not discriminate against Plaintiff during the October 2001 cycle, a one-year gap does not defeat a continuing violation claim if the acts before and after the gap are part of the same unlawful practice.  See, e.g., Morgan, 536 U.S. at 118 (noting that a hostile work environment claim could be continuous even if no discriminatory act occurred for ten months).

## 2. State and City Law Claims

A New York State or New York City discrimination claim is time-barred if filed outside New York's three-year statute of limitations. See N.Y. C.P.L.R. § 214(2); Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 297 (N.Y. 1983); Farrugia v. North Shore Univ. Hosp., 820 N.Y.S.2d 718, 746 (N.Y. Sup. Ct. 2006). The continuing violation doctrine applies to New York state and city claims. See Blake, 2003 WL 21910867, at *6; Staff v. Pall Corp., 233 F. Supp. 2d 516, 527 (S.D.N.Y. 2002).

Because Plaintiff filed her complaint on November 12, 2004, any state or city law claims premised on acts that occurred prior to November 12, 2001 are time-barred, unless the continuing violation exception applies. The following claims fall outside of New York's three-year statute of limitations period: (1) CPLP's failure to promote Plaintiff to partner at her performance reviews in 1997-2001; (2) CPLP's failure to raise Plaintiff's salary at her performance reviews in 2000 and 2001; (3) CPLP's failure to increase Plaintiff's billing rate at her performance reviews in 1999 and 2000; and (4) CPLP's failure to assign Plaintiff sufficient work prior to November 12, 2001.

For the reasons set forth in Part II.B.1.b, the Court concludes that the continuing violation exception applies to Plaintiff's work assignment claim, but does not apply to Plaintiff's promotion, salary, and billing rate claims. Thus,

the Court concludes that the following state and city law claims are time-barred and grants CPLP summary judgment with respect to these claims: 1) CPLP's failure to promote Plaintiff to partner at her performance reviews in 1999-2001; (2) CPLP's failure to raise Plaintiff's salary at her performance reviews in 2000 and 2001; and (3) CPLP's failure to increase Plaintiff's billing rate at her performance review in 1999 and 2000. The Court concludes that Plaintiff's state and city law work assignment claim is not time-barred.

### 3. Timely Claims

Thus, the following remaining claims are timely and should be addressed on the merits: (1) all claims arising from CPLP's alleged failure to provide Plaintiff with adequate work; (2) state and city law claims arising from CPLP's failure to promote Plaintiff in 2002; (3) all claims arising from CPLP's failure to promote Plaintiff in 2003; (4) all claims arising from CPLP's failure to raise Plaintiff's salary in 2003; and (5) all claims arising from Plaintiff's termination in 2003.

The Court notes that although the time-barred incidents "cannot provide an independent basis for liability, they may be utilized as circumstantial evidence of intent." Griffin v. New York City Off-Track Betting Corp., No. 98 Civ. 5278, 2002 WL 252758, at *4 (S.D.N.Y. Feb. 20, 2002); see also Fitzgerald v. Henderson, 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of

limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period.").

C. <u>Discrimination Claims</u>

1. <u>Legal Standard</u>

On a motion for summary judgment, claims of discrimination under Title VII, the New York State Human Rights Law, and the New York City Administrative Code are analyzed under the three-step burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[19]

Pursuant to this three-step analysis, a plaintiff must first establish a <u>prima facie</u> case of discrimination, by "introduc[ing] evidence that raises a reasonable inference that the action taken by the employer was based on an impermissible factor." <u>Holcomb v. Iona College</u>, 521 F.3d 130, 138 (2d Cir. 2008). A plaintiff must show: "(1) that [s]he belonged to a protected class; (2) that [s]he was qualified for the position [s]he held [or to which she applied]; (3) that [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." <u>Id.</u>; <u>see also</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. The

_____

[19] <u>See</u> <u>Forrest v. Jewish Guild for the Blind</u>, 3 N.Y.3d 295, 316-17 (N.Y. 2004) (applying the <u>McDonnell Douglas</u> framework to claims brought under the New York State Human Rights Law and the New York City Administrative Code).

burden in establishing a <u>prima facie</u> case is "de minimis." <u>Woodman</u>, 411 F.3d at 76.

Once a plaintiff establishes a <u>prima facie</u> case, "a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 216 (2d Cir. 2005) (quoting <u>Farias v. Instructional Sys., Inc.</u>, 259 F.3d 91, 98 (2d Cir. 2001). "This burden is only of production [of evidence], not of persuasion." <u>Constance v. Pepsi Bottling Co.</u>, No. 03 Civ. 5009, 2007 WL 2460688, at *14 (E.D.N.Y. Aug. 24, 2007). "If the defendant proffers such a reason, the presumption of discrimination created by the <u>prima facie</u> case drops out of the analysis." <u>Dawson</u>, 398 F.3d at 216. The plaintiff must then show, by a preponderance of the evidence, that the reason the defendant has offered is pretextual, and that the adverse action was in fact motivated by discrimination. <u>Id.</u>; <u>see also</u> <u>McPherson v. N.Y.C. Dep't of Educ.</u>, 457 F.3d 211, 215 (2d Cir. 2006). "[T]he ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited . . . discrimination occurred." <u>Woodman</u>, 411 F.3d at 76 (internal quotation marks and citations omitted).

In determining the appropriateness of summary judgment, the Court must determine whether the plaintiff has presented facts pursuant to the <u>McDonnell Douglas</u> framework such that a

reasonable jury could infer that the employer based its employment decision on an impermissible factor. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). "Summary judgment should be granted sparingly when intent is at issue." Ramos v. Marriott Int'l, Inc., 134 F. Supp. 2d 328, 345 (S.D.N.Y. 2001). Moreover, "the court should not consider the record solely in piecemeal fashion, . . . for a jury, in assessing whether there was impermissible discrimination and whether the defendant's proffered explanation is a pretext for such discrimination, would be entitled to view the evidence as a whole." Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000).

### 2. Analysis

The Court concludes that Defendant's motion for summary judgment should be (1) denied with respect Plaintiff's work assignment claim; (2) denied with respect to Plaintiff's 2002 and 2003 failure to promote claims; (3) granted with respect to Plaintiff's 2003 salary claim; and (4) granted with respect to Plaintiff's discriminatory termination claim.[20]

### a. Work Assignment Claim

Plaintiff claims that the CPLP partners discriminated against her by failing to provide her with adequate work.

---

[20] The Court addresses Plaintiff's retaliatory termination claim infra Part II.D.

Defendant seeks summary judgment with respect to this claim.  The
Court concludes that Plaintiff has submitted sufficient evidence
to survive summary judgment with respect to this claim.

### i. Prima Facie Case

Pursuant to McDonnell Douglas, the Court first considers
whether Plaintiff has presented evidence establishing a prima
facie case of discrimination.[21]

### a. Qualification

To establish that she was qualified for her position,
Plaintiff need only show that she "possesse[d] the basic skills
necessary for performance of [the] job."  Slattery v. Swiss
Reinsur. Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001) (internal
quotation marks and citation omitted).

Plaintiff produced substantial evidence that she was
qualified to be a litigation associate at CPLP.  It is undisputed
that Plaintiff has a law degree, is admitted to the New York
state bar, and had nine years of work experience at another firm
specializing in patent and trademark law prior to joining CPLP.
(See Def. 56.1 Stat. ¶¶ 4-5.)  Furthermore, "by hiring
[Plaintiff], the employer itself has already expressed a belief
that she is minimally qualified."  Gregory v. Daly, 243 F.3d 687,

---

[21] It is undisputed that, as a woman, Plaintiff is a member
of a protected class.  Accordingly, Plaintiff has established the
first factor of her prima facie case with respect to each of her
discrimination claims.

22

696 (2d Cir. 2001).  Finally, Plaintiff's six-year tenure as a
CPLP litigation associate lends further support to her basic
qualification for the position.  Thus, the Court concludes that
Plaintiff has established the second element of her prima facie
case.

### b. Adverse Employment Action

To qualify as an "adverse employment action," an action must
materially change an employee's "terms and conditions of
employment," and "must be more disruptive than a mere
inconvenience or an alteration of job responsibilities." Weeks
v. New York State Div. of Parole, 273 F.3d 76, 85 (2d Cir. 2001)
(internal quotation marks and citations omitted), abrogated on
other grounds by Morgan, 536 U.S. 101, and abrogation recognized
by Johnson v. Buffalo Police Dep't, 46 Fed. Appx. 11, 13 (2d Cir.
2002).  An action that affects an employee's "opportunit[ies] for
professional growth" and promotion qualifies as an adverse
employment action.  See de la Cruz v. New York City Human Res.
Admin. Dep't of Soc. Servs., 82 F.3d 16, 21 (2d Cir. 1996); see
also Dawsonv. Bumble & Bumble, 246 F. Supp. 2d 301, 322 (S.D.N.Y.
2003) ("[A] material decrease in earning potential may qualify as
an adverse employment action.").

Plaintiff alleges that the CPLP partners failed to provide
her with adequate work, and Plaintiff presents evidence in
support of her claim.  (See, e.g, Pl. Decl. ¶¶ 33, 35-36, 39, 44,

61, 76-79; Pl. Ex. E, P, W.)  This alleged failure to assign
Plaintiff adequate work constitutes an adverse employment action.
CPLP asserts that it considered billed hours as relevant to
salary and promotion decisions.  (See, e.g., Pavane Decl. ¶ 13.)
Thus, Defendant's alleged failure to provide Plaintiff with
adequate work affected her opportunities for professional growth
and promotion at CPLP, and therefore qualifies as an adverse
employment action.  Accordingly, Plaintiff satisfies the third
element of her prima facie case.

### c. Inference of Discrimination

To satisfy the final factor of her prima facie case,
Plaintiff must submit evidence that CPLP's failure to provide her
with adequate work occurred under circumstances giving rise to an
inference of discrimination.  The "burden on [P]laintiff is
minimal at this stage." Taylor v. Local 32E Serv. Employees
Int'l Union, 286 F. Supp. 2d 246, 253-54 (S.D.N.Y. 2003).  The
Court concludes that Plaintiff has presented evidence sufficient
to meet this minimal burden.

First, Plaintiff presents evidence of disparate treatment.
"A showing that the employer treated a similarly situated
employee differently is a common and especially effective method
of establishing a prima facie case of discrimination." Hinton v.
City Coll. of New York, No. 05 Civ. 8951, 2008 WL 591802, at *16
(S.D.N.Y. Feb. 29, 2008) (internal quotation marks and citation

omitted).  Plaintiff declares that she observed that the two male

senior litigation associates at CPLP were assigned new work

immediately after the matter they were working on terminated,

while she, the only female senior litigation associate, had to

seek out work.  (See, e.g., Pl. Decl. ¶ 39, 95; Pl. Dep. 201-02.)

Plaintiff also alleges that CPLP partners reassigned work away

from her to male senior associates.[22] (See, e.g., Pl. Decl. ¶

61.)

Second, Plaintiff presents evidence of a remark made by

---

[22] Defendant argues that Mr. Fazzari and Mr. Hemingway, the
two men with whom Plaintiff compares herself, are not similarly
situated to Plaintiff.  In order to be similarly situated, "those
employees must have a situation sufficiently similar to
plaintiff's to support at least a minimal inference that the
difference of treatment may be attributable to discrimination."
McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001).  The
Court concludes that the question of whether Mr. Fazzari and Mr.
Hemingway are similarly situated with Plaintiff presents a
question of fact for the jury.  See Graham v. Long Island R.R.,
230 F.3d 34, 39 (2d Cir. 2000) ("Whether two employees are
similarly situated ordinarily presents a question of fact for the
jury.").
    Defendant's arguments to the contrary are unpersuasive.
First, Defendant notes that Mr. Fazzari and Mr. Hemingway had
technical degrees and handled patent prosecutions, while
Plaintiff did not.  (See Def. Ctr. 56.1. ¶¶ 5-6.)  However,
Defendant does not point to evidence regarding the number of
cases assigned to Mr. Hemingway or Mr. Fazzari for which their
technical expertise was relevant.  Second, Defendant points to
Plaintiff's statement in her deposition that she "thought" Mr.
Hemingway and Mr. Fazzari might have been more experienced than
her "based on their age."  (See Def. Ctr. 56.1 ¶¶ 5-6; Pl. Dep.
149-51.)  However, Defendant points to no direct evidence
regarding Mr. Hemingway's or Mr. Fazzari's experience, nor to any
evidence that this experience was relevant to the assignments
they were given.  The Court therefore concludes that Defendant
fails to establish, as a matter of law, that Mr. Hemingway and
Mr. Fazzari are not similarly situated to Plaintiff.

Pavane that could be construed as reflecting discriminatory animus. See Gregory, 243 F.3d at 697 ("[The Second Circuit has] long recognized that . . . remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus may give rise to an inference of discriminatory motive.") (internal quotations marks and citation omitted). Plaintiff declared that when she requested help from Pavane in dealing with an uncooperative paralegal, he told her that she was not "sweet" enough and needed to use more "sugar" with any paralegal who was uncooperative. (See Pl. Decl. ¶ 100.) A reasonable jury could find that Pavane's statement indicates that (1) he holds stereotypes that women should be "sweet" and non-aggressive, and (2) that Pavane believed that Plaintiff did not fit this stereotype. Pavane's comment could therefore support a jury finding that CPLP's failure to provide Plaintiff with sufficient work was motivated by Plaintiff's failure to fulfill sex stereotypes of "sweet[ness]," and therefore constituted discrimination.[23] See Price Waterhouse v. Hopkins, 490 U.S. 228, 250 (1989) ("In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be

_____

[23] Plaintiff also alleges that during her 1997 performance review, Pavane said that he had not been sure about her abilities because of her "damsel in distress" act. (See Pl. Decl. ¶ 20.) This remark has weaker evidentiary value because it occurred many years before the acts underlying Plaintiff's claims and because it accompanied a positive performance review. However, the Court considers the remark as part of the entire record.

aggressive, or that she must not be, has acted on the basis of gender."). The fact that Pavane is CPLP's managing partner (see Pavane Decl. ¶ 1), and that he interacted closely with Plaintiff regarding her requests for additional work (see, e.g., Pl. Decl. ¶¶ 39, 61, 77), contributes to the probative value of this remark. See Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115-16 (2d Cir. 2007) (holding that remarks may be probative when they were made by a decisionmaker and could be construed as explaining why a decision was made or as evidence of a discriminatory state of mind).

Third, Plaintiff presented evidence that Pavane did not investigate her sex discrimination complaint, made during her 2001 performance review, in accordance with CPLP's discrimination policy. See supra Part I.B; cf. Reed v. Conn. Dep't of Transp., 161 F. Supp. 2d 73, 81 (D. Conn. 2001) ("[A]n employer's noncompliance with its own affirmative action plan may be probative of discriminatory intent."). Plaintiff declares that she complained at her 2001 review that CPLP has a "gender bias problem," and specifically stated that the CPLP partners refused to assign work to her and "waited until Mr. Fazzari or Mr. Hemingway were available." (Pl. Decl. ¶ 46.) A reasonable jury could find that Pavane's failure to investigate this complaint pursuant to CPLP's discrimination policy was evidence that he was covering up discriminatory treatment. Accordingly, Plaintiff

satisfies the fourth element of her <u>prima facie</u> case, and her burden at the first stage of the <u>McDonnell Douglas</u> burden-shifting framework.[24]

ii. <u>Defendant's Non-Discriminatory Reasons</u>

Defendant asserts the following non-discriminatory reasons for CPLP's alleged failure to provide Plaintiff with adequate work: (1) Plaintiff made little or no effort to aggressively seek work; (2) Plaintiff turned down or failed to timely complete assignments; and (3) Plaintiff did not possess the requisite scientific qualifications to complete the work she complained about not receiving. Moreover, Defendant asserts as a general response to all of Plaintiff's claims that Plaintiff had inconsistent work quality and a record of unprofessional interactions and personality conflicts with CPLP partners, associates, and staff.

---

[24] Defendant also argues that Plaintiff failed to establish a <u>prima facie</u> case because, <u>inter alia</u>, (1) statistical evidence demonstrates that for an IP firm, CPLP maintained a diverse employee population; (2) other female litigation associates received adequate work and some of the work sought by Plaintiff was assigned to female associates; (3) Plaintiff made little or no effort to aggressively seek work; (4) Plaintiff turned down or failed to timely complete assignments; and (5) Plaintiff did not possess the requisite scientific qualifications to complete the work she complained about not receiving. (<u>See</u> Def. Mem. 13.) This evidence is not appropriately considered at the <u>prima facie</u> stage, where Plaintiff's burden is <u>de minimis</u>. <u>See</u> <u>Powell v. Syracuse Univ.</u>, 580 F.2d 1150, 1155 (2d Cir. 1978) (warning that courts should not "unnecessarily collapse[] the steps suggested by <u>McDonnell Douglas</u> by shifting considerations which are more appropriate to the employer's rebuttal phase [to the <u>prima facie</u> phase]").

The Court notes that Defendant cites no evidence supporting its claim that Plaintiff did not possess the requisite scientific qualifications to complete the work that she requested.[25] Because Defendant does not meet its burden to produce evidence supporting this explanation, the Court will not consider it. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (noting that the second stage of McDonnell Douglas shifts the burden of production of admissible evidence to the defendant). However, Defendant's remaining explanations are supported by citations to the record and represent legitimate non-discriminatory reasons for CPLP's alleged failure to allocate Plaintiff sufficient work. Accordingly, Defendant meets its burden at the second stage of the McDonnell Douglas framework.

### iii. Pretext

Because Defendant articulated non-discriminatory reasons for CPLP's failure to provide Plaintiff with adequate work, the Court next determines whether a reasonable jury could find that CPLP's explanation is a pretext for discrimination. The Court concludes that Plaintiff has provided sufficient evidence of pretext to survive summary judgment.

First, Plaintiff draws into question Defendant's asserted justifications for failing to give her adequate work. Plaintiff

---

[25] Plaintiff also rebuts this claim by declaring that she "never requested work that [she] could not handle." (Pl. Decl. ¶ 139.)

introduced evidence that she frequently sought out work from partners, creating a genuine issue of material fact regarding CPLP's claim that she did not aggressively seek work. (See Pl. Decl. ¶¶ 39, 61, 77, 78, 79; Pl. Exs. HH, GG, II.) In addition, Plaintiff's declaration disputes certain incidents described by CPLP partners regarding her alleged refusal of assignments and failure to timely complete assignments. (Compare Pavane Decl. ¶ 15.6, Def. Ex. G, D121-23, Stuart Dep. 125-27 with Pl. Decl. ¶¶ 76, 80.) This evidence creates a factual question regarding the veracity of Defendant's explanation.

Second, Defendant's assertion that Plaintiff had inconsistent work quality and a poor working relationship with partners, associates, and staff requires a credibility determination that is properly made by a jury. For example, although Defendant asserts in its 56.1 Statement that "[l]awyers, paralegals and secretaries all complained about [P]laintiff's unprofessional interactions," Defendant cites no written record of any complaints made by non-partner employees during Plaintiff's tenure.[26] (See Def. 56.1 ¶ 8.) Likewise, although Defendant submits an extensive email record documenting disputes between Plaintiff and the CPLP partners and complaints by the

---

[26] The Court notes that Def. Ex. G, D056 appears to document a dispute between Plaintiff and CPLP's office manager. However, Defendant provides no foundation for this document and the Court therefore does not rely upon it.

CPLP partners about Plaintiff's behavior and work quality,

Plaintiff draws the credibility of this record into question.[27]

Plaintiff cites a 2001 email from a CPLP partner to the CPLP

partner list, sent the day after Plaintiff's October 2001

performance review where she complained of gender discrimination.

This email notes that there "seem[s] to be a 'disconnect' between

the [favorable] comments at [Plaintiff's performance] review on

her work and the (lack of increased) compensation," and states

that although "[t]he results may well be justified by factors

other than the quality of her work, . . . we're not leaving

ourselves in a good position."  (See Pl. Ex. R.)  A jury could

find that this email supports an inference that the CPLP partners

intentionally created a negative record about Plaintiff in

anticipation of litigation.  This interpretation is supported by

the email record, which includes only one complaint about

Plaintiff prior to her October 2001 performance review.  (See

Def. Ex. G.)

Third, although Defendant cites CPLP's record of diversity

and treatment of other female associates in support of summary

judgment, there are disputes of material fact regarding this

---

[27] Defendant also submitted deposition testimony from CPLP
partners and staff describing alleged conflicts with Plaintiff
and their perceptions of her poor attitude and inconsistent work
quality.  In light of the disputes of fact described above, the
Court concludes that a jury is best situated to evaluate the
credibility of this testimony.

record.[28]  Defendant argues that statistical evidence
demonstrates that for an intellectual property firm, CPLP
maintained a diverse employee population.[29]  Defendant cites an
expert declaration, which stated that "the level of diversity at
CPLP is in line with current progressive trends in the field of
IP law."  (Talmadge Decl. ¶ 15.)  Defendant's expert based her
analysis on a firm whose "practice is predominantly in
general/industrial chemistry, physics and electrical/mechanical
engineering."[30]  (Id. ¶ 16.)  However, there is a dispute of fact
with respect to CPLP's main practice areas.  The only evidence
cited by Defendant to support the expert's characterization of
CPLP's practice is Mr. Pavane's declaration.  (See Def. 56.1 ¶
1.)  Plaintiff disputes this characterization of the firm's

---

[28] Defendant also points to other evidence in support of
summary judgment, including (1) that the same CPLP partners
accused of discriminating against Plaintiff also participated in
her hiring, (2) that CPLP regularly increased the salaries of
other female associates, and (3) that there were male associates
who did not receive salary increases.  Although this evidence
weighs against Plaintiff's discrimination claim, it is the role
of a jury to balance the evidence.  See Rule v. Brine, Inc., 85
F.3d 1002, 1011 (2d Cir. 1996) ("Any weighing of the evidence is
the prerogative of the finder of fact, not an exercise for the
court on summary judgment.").

[29] The Court is entitled to "consider the . . . mix of the
work force when trying to make the determination as to
[Defendant's] motivation."  Furnco Constr. Corp. v. Waters, 438
U.S. 567, 580 (1978).

[30] The declaration stated that there are "very few women
attorneys with the requisite technical qualifications and
background" to practice in those areas. (Talmadge Decl. ¶ 16.)

practice based on her own experiences working at CPLP, and therefore draws into question the expert declaration's critical assumption. (See Pl. Decl. ¶ 138.)

Defendant also alleges that two female associates, Ms. Chettih and Ms. Kim, received adequate work from the CPLP partners and that Plaintiff acknowledged that some of the work she wanted was distributed to these associates. However, neither party's 56.1 Statement cites evidence regarding the overall allocation of work to Ms. Kim or Ms. Chettih, or the total number of hours that they billed each year. Absent such information, the fact that CPLP partners assigned female associates to work on cases for which Plaintiff wanted to be assigned does not demonstrate that CPLP treated other female associates similarly to male associates. Furthermore, there is a question of fact regarding whether Ms. Chettih and Ms. Kim are similarly situated to Plaintiff, and therefore the extent to which their experiences draw into question Plaintiff's allegations of discrimination.[31]

_____

[31] Plaintiff presented evidence that Ms. Chettih spent most of her time reviewing and summarizing documents in pharmaceutical patent cases, and that she had only limited experience taking depositions and no experience arguing motions or appeals. (See Pl. Decl. ¶¶ 65-66; Chettih Dep. 66-67.) Plaintiff also declared that she observed that Ms. Kim spent most of her time on lower-level litigation tasks such as document review and legal research. (See Pl. Decl. ¶ 65.) In contrast, Plaintiff alleges that she engaged in higher-level legal work, including brief-writing and oral argument. (See, e.g., Pl. Decl. ¶¶ 118, 130, 139.) Considering these allegations in the light most favorable to Plaintiff, a reasonable jury could find that Ms. Kim and Ms. Chettih were not similarly situated to Plaintiff, because (1)

Accordingly, the Court concludes that summary judgment on the work assignment claim is not appropriate based on (1) Plaintiff's prima facie evidence of discrimination in the allocation of work, and (2) the Court's conclusion that a reasonable jury could find that CPLP's proffered reasons for failing to assign her adequate work are false.  See Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). "Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000). Pavane's comments to Plaintiff and his failure to investigate her discrimination claim strengthen the inference that the proffered explanation masks discriminatory animus.

Accordingly, the Court denies Defendant summary judgment with respect to Plaintiff's work assignment claim.

b. Promotion Claim

Plaintiff claims that CPLP discriminated against her by failing to promote her to partner in 2002 and 2003.[32]  Defendant

_____

they were not performing the same kind of legal work as Plaintiff and therefore would be given different assignments; and (2) Plaintiff's more senior status may have led her to hit a "glass ceiling" that did not affect Ms. Kim and Ms. Chettih.

[32] Plaintiff presents evidence that CPLP decided not to promote her in August or September 2003, prior to her termination on September 18, 2003.  (See Pl. Decl. ¶ 136; Pl. Ex. CC.) Additional factual development is required to determine whether

34

seeks summary judgment with respect to this claim.[33]   The Court

concludes that Plaintiff has submitted sufficient evidence to

survive summary judgment.

### i. Prima Facie Case

#### a. Qualification for Promotion

Plaintiff presents evidence that she possessed the basic

skills necessary for promotion to partner.  See Slattery, 248

F.3d at 92.  It is undisputed that Plaintiff originated business

for CPLP (see Def. Ctr. 56.1 ¶ 5-6), and Plaintiff alleges that

she received a positive review of her work during her October

2002 performance evaluation (see Pl. Decl. ¶ 68).  Moreover,

---

this alleged failure to promote Plaintiff provides a basis for a
claim.  As discussed infra Part II.C.2.c, if CPLP's promotion
decision never took effect, it cannot form the basis of a claim.
However, it is not apparent from the facts before the Court
whether CPLP promotions take effect at the time a decision is
made, or whether they take effect at the start of the October
salary cycle.  Interpreting the facts in the light most favorable
to Plaintiff, the Court assumes that CPLP's 2003 promotion
decision took effect immediately, and therefore provides the
basis for a claim.

[33] The Court notes that in order to allege a Title VII claim
for failure to promote, Plaintiff must have applied for a
promotion to partner and been rejected.  See Brown v. Coach
Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998).  Defendant does
not argue that Plaintiff failed to apply for a promotion, and
Plaintiff has submitted evidence that she repeatedly requested
that CPLP consider her for partnership.  The Court therefore
concludes that Plaintiff meets the application requirement.  See
Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 129 (2d Cir.
2004) ("[W]e have held that if an employee expresses to the
employer an interest in promotion to a particular class of
positions, that general expression of interest may satisfy the
requirement that the employee apply for the position.").

Plaintiff alleges that during her initial interview for the associate position, the then-managing partner, Cohen, represented that Plaintiff would have the opportunity to be considered for promotion. (See Pl. Decl. ¶ 15.) This statement suggests that Plaintiff possessed the basic qualifications for promotion.[34] This evidence satisfies the qualification element of Plaintiff's prima facie case.

### b. Adverse Employment Action

It is well-established that a failure to promote constitutes an adverse employment action. See Demoret v. Zegarelli, 451 F.3d 140, 151 (2d. Cir. 2006); Mauro v. S. New England Telecomms., Inc., 208 F.3d 384, 386 (2d Cir. 2000). It is undisputed that CPLP never promoted Plaintiff. Accordingly, the Court concludes that Plaintiff satisfies this element of her prima facie case.

### c. Inference of Discrimination

Plaintiff submitts evidence supporting an inference that CPLP did not promote her due to discrimination. First, as discussed in Part II.C.2.a, a reasonable jury could find that CPLP discriminated against Plaintiff in work assignments. Because the partners who allegedly discriminated against Plaintiff in the assignment of work also participated in

---

[34] The Court notes that a technical degree is not required for promotion to partner. Plaintiff alleges that Mr. Alper ("Alper"), who was promoted to partner at CPLP after two years, lacked a technical degree. (See Alper Dep. 11.)

36

promotion decisions, CPLP's failure to promote Plaintiff supports
an inference of discrimination as well.  See Vargas v. Chubb
Group of Ins. Cos., No. 99 Civ. 4916, 2002 WL 31175233, at *7
(S.D.N.Y. Sept. 30, 2002) (finding that a plaintiff's "evidence
as to the circumstances under which she was denied [one] position
[wa]s itself sufficient to create an inference of discrimination
[with respect to a second position]").  Second, CPLP promoted
three male associates to partner during Plaintiff's employment.[35]
"[An] inference [of discrimination] can be established if the
Plaintiff shows that the position sought went to a person outside
h[er] protected class."  Mitchell v. N. Westchester Hosp., 171 F.
Supp. 2d 274, 278 (S.D.N.Y. 2001).[36]  Finally, as discussed in
Part II.C.2.a, Pavane made comments to Plaintiff that could be
interpreted as reflecting discriminatory animus, and failed to
investigate Plaintiff's October 2001 discrimination complaint.
Together, these allegations are sufficient to establish that
CPLP's failure to promote Plaintiff occurred under circumstances
giving rise to an inference of discrimination.[37]

---

[35] CPLP did not promote any female associates to partner
during Plaintiff's employment.

[36] Defendant argues that these male associates were not
similarly situated to Plaintiff, but this argument raises a
question of fact for the jury.  See Graham, 230 F.3d at 39.

[37] Defendant incorrectly argues that Plaintiff must show that
"her qualifications were so superior to the persons selected that
no reasonable person could have chosen the candidates selected
over her but for gender bias."  (Def. Mem. at 15.)  This standard

Accordingly, Plaintiff satisfies the final element of her prima facie case, and thereby establishes a prima facie case of discrimination with respect to her failure to promote claim.

ii. Defendant's Non-Discriminatory Reasons

Defendant asserts that it did not promote Plaintiff to partner because she was less qualified than the three male associates who were promoted during her tenure (the "three associates"). CPLP alleges that (1) the three associates had better records of performance than Plaintiff; (2) the three associates got along with the CPLP partners, associates, and staff while Plaintiff did not; (3) unlike Plaintiff, the three associates were educated in the United States and possessed technical degrees; (4) unlike Plaintiff, the three associates were admitted to the U.S. Patent and Trademark Office; and (5) the three associates generated more business than Plaintiff. Defendant also asserts that Plaintiff had inconsistent work quality, low billable hours, and a record of unprofessional interactions and personality conflicts with CPLP partners, associates, and staff.

_____

applies only if "a plaintiff seeks to prevent summary judgment [soley] on the strength of a discrepancy in qualifications ignored by an employer." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001). Plaintiff presents other evidence of discrimination, including remarks that may be construed as reflecting discriminatory animus, and evidence that CPLP partners discriminated against her in the allocation of work. Accordingly, Byrnie's standard is inapplicable.

The Court notes that Defendant's 56.1 Statement and Response to Plaintiff's Counter 56.1 Statement cites no evidence regarding the work performance of the three associates promoted to partner, or their relationships with CPLP partners, associates, and staff. (See, e.g., Def. Ctr. 56.1 Stat. ¶¶ 5-6.) Thus, Defendant did not satisfy its burden of producing evidence that CPLP did not promote Plaintiff because other associates (1) had better records of work performance, and (2) got along with CPLP partners, associates, and staff. See St. Mary's Honor Ctr., 509 U.S. at 507. Accordingly, these assertions do not establish a non-discriminatory explanation for CPLP's failure to promote Plaintiff.

However, Defendant's remaining allegations are supported by evidence and constitute legitimate, non-discriminatory reasons for CPLP's failure to promote Plaintiff. Thus, Defendant has met its burden under the second stage of the McDonnell Douglas framework, and the Court must determine whether a reasonable jury could conclude that CPLP's explanation is a pretext for discrimination.

### iii. Pretext

The Court concludes that Plaintiff presents sufficient evidence of pretext to survive summary judgment. Although Defendant submits evidence that the three associates who were promoted had superior performance to Plaintiff on some metrics,

such as business generation, this evidence is not dispositive. Defendant does not allege that CPLP had only a fixed number of partner positions available for associates seeking promotion. Thus, the question before the Court is whether a reasonable jury could find that Plaintiff was <u>also</u> qualified for promotion and that she would have received a promotion absent discrimination. The Court concludes that there is a genuine issue of material fact with respect to this question.

First, Plaintiff's evidence draws into question CPLP's claim that it did not promote Plaintiff in part due to her educational background and lack of a technical degree. For example, Plaintiff alleges that when she first interviewed at CPLP, Cohen, the then-managing partner, informed her that CPLP would afford her the opportunity to be considered for promotion to partner. (<u>See</u> Pl. Decl. ¶ 15.) Plaintiff discussed her educational and work background with Cohen, and he did not inform her that her background would pose an obstacle to promotion. It is also undisputed that Alper, who was promoted to partner in 1996, did not have a technical background and was not admitted to the U.S. Patent and Trademark Office. (<u>See</u> Alper Dep. 11.) Finally, there is a factual dispute regarding CPLP's principal areas of practice. <u>See</u> <u>supra</u> Part II.C.2.a.iii. This dispute raises a factual question regarding the relevance of a technical background and admission to the USPTO to CPLP's practice.

Second, Plaintiff draws into question whether CPLP considered business generation relevant to promotion. Plaintiff alleges that when she interviewed for her position, Alper informed her that business origination affects compensation, but not eligibility for promotion to partner. He also allegedly told Plaintiff that he had not originated any business before his promotion to partner. (See Pl. Decl. ¶ 16.) These allegations suggest that CPLP's reliance on Plaintiff's business generation is pretextual.

Third, as discussed in Part II.C.2.a.iii, Defendant's assertion that Plaintiff had inconsistent work performance and personality conflicts with partners, associates, and staff requires a credibility determination that is properly made by a jury.[38]

Thus, Plaintiff has produced evidence that CPLP's explanations for not promoting Plaintiff are unworthy of credence. Coupled with Plaintiff's prima facie case, including her evidence that CPLP discriminated against her in the allocation of work, the Court concludes that a reasonable jury could find that Defendant's explanations are a pretext for

_____

[38] Defendant also asserts that it did not promote Plaintiff due to her failure to meet its billable hour requirement. However, as discussed in Part II.C.2.a, Plaintiff presented evidence that her failure to meet the billable hour requirement was due to discrimination. A reasonable jury could find that this alleged discriminatory treatment draws into question CPLP's reliance on Plaintiff's billable hours in its promotion decision.

discrimination.  See James v. New York Racing Ass'n, 233 F.3d
149, 156 (2d Cir. 2000); Ramos, 134 F. Supp. 2d at 345.
Accordingly, the Court denies Defendant summary judgment on this
claim.

### c. 2003 Salary Claim

Although CPLP terminated Plaintiff before the start of the
October 2003-September 2004 salary cycle, Plaintiff presents
evidence that CPLP had previously decided not to raise her salary
for this upcoming period.  (See Pl. Opp'n 8-9; Pl. Ex. CC.)
Plaintiff argues that the Court should consider this 2003 salary
decision as the basis for an additional discrimination claim.
The Court concludes that the 2003 salary decision does not
provide a basis for a claim, because the decision never took
effect.

CPLP fired Plaintiff in September 2003, before the beginning
of the October 2003 salary cycle.  Because CPLP's salary decision
was never implemented with respect to Plaintiff, Plaintiff was
never subject to any "materially adverse change in the terms and
conditions of [her] employment," as required under the first
stage of the McDonnell Douglas framework.  See Weeks, 273 F.3d at
85.  Accordingly, CPLP's 2003 salary decision cannot form the
basis of a discrimination claim.  See Cheshire v. Paulson, No. 04
Civ. 3884, 2007 WL 1703180, at *5 (E.D.N.Y. June 12, 2007)
(holding that "absent without leave" charges against a plaintiff

did not constitute an adverse employment action under the Americans with Disabilities Act because, although these charges formed "the basis for later disciplinary action . . . , those actions never took effect"). The Court therefore grants Defendant summary judgment with respect to Plaintiff's 2003 salary claim.

### d. <u>Termination Claim</u>

Plaintiff claims that CPLP discriminated against her by terminating her employment in September 2003. Defendant seeks summary judgment with respect to this termination claim. Because Plaintiff fails to establish that her termination raises a discrimination claim independent of her retaliation claim, the Court grants Defendant summary judgment.

Plaintiff argues that CPLP terminated her because of her September 16, 2003 email complaining of sex discrimination. (<u>See</u> Pl. Opp. 17-19.) Plaintiff's evidence in support of her discrimination claim is therefore not "distinguishable from the evidence that supports h[er] claim for retaliatory discharge." <u>See</u> <u>Henderson v. Ctr. for Cmty. Alternatives</u>, 911 F. Supp. 689, 705-07 (S.D.N.Y. 1996). Accordingly, the Court concludes that Plaintiff has not alleged a claim of discriminatory discharge separate from her claim of retaliatory discharge. Summary

judgment on her discrimination claim is therefore warranted.[39]
See id.

### e. Conclusion

The Court therefore grants Defendant summary judgment with respect to Plaintiff's (1) 2003 salary claim; and (2) discriminatory termination claim.  The Court denies Defendant summary judgment with respect to Plaintiff's (1) work assignment claim; and (2) 2002 and 2003 promotion claims.

### D. Retaliation Claim

Plaintiff alleges that Defendant retaliated against her for her September 16, 2003 email complaining about gender discrimination at CPLP.[40]  Defendant seeks summary judgment with respect to this retaliation claim.  The Court concludes that a

---

[39] CPLP's alleged discrimination against Plaintiff regarding work assignments and promotions constitutes minimal evidence of discriminatory intent in her firing.  However, Plaintiff does not argue that these incidents are sufficient to support an inference of discrimination regarding her termination, and the Court concludes that no reasonable jury could find such an inference. Significantly, Plaintiff provides no examples of similarly situated employees who were treated differently after engaging in similar conduct.  See Graham, 230 F.3d at 40.  Furthermore, Plaintiff's evidence indicates that CPLP made salary and promotion decisions regarding Plaintiff for the October 2003 cycle just a few weeks before her termination.  (See Pl. Decl. ¶ 136.)  This chronology weakens any inference that her termination related to events preceding Plaintiff's September 2003 emails.

[40] CPLP's alleged retaliation for Plaintiff's September 16, 2003 email is the only retaliation claim specifically mentioned in the Complaint or discussed in Plaintiff's Opposition brief. Accordingly, although Plaintiff's Declaration characterizes additional actions by Defendant as retaliatory, the Court will not consider them.

reasonable jury could find that CPLP retaliated against Plaintiff
for her email.  Accordingly, the Court denies Defendant summary
judgment on this claim.

### 1. Legal Standard

Title VII prohibits an employer from "discriminat[ing]
against any of [its] employees . . . because [the employee] has
made a charge, testified, assisted, or participated in any manner
in an investigation, proceeding, or hearing under [Title VII]."
42 U.S.C. § 2000e-3(a).  Retaliation claims brought pursuant to
Title VII are evaluated under a three-step burden-shifting
analysis, which follows the McDonnell Douglas framework.  See
Jute, 420 F.3d at 173; Terry v. Ashcroft, 336 F.3d 128, 141 (2d
Cir. 2003).

Plaintiff must first establish a prima facie case of
retaliation, by showing: "'(1) participation in a protected
activity; (2) that the defendant knew of the protected activity;
(3) an adverse employment action; and (4) a causal connection
between the protected activity and the adverse employment
action.'"  Jute, 420 F.3d at 173 (quoting McMenemy v. City of
Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)).  Establishing a
prima facie case gives rise to a presumption of retaliation, at
which point "the onus falls on the employer to articulate a
legitimate, non-retaliatory reason for the adverse employment
action."  Id.  Once the employer offers such a reason, "the

presumption of retaliation dissipates," and the plaintiff must show that the proffered given is pretextual, and that "retaliation was a substantial reason for the adverse employment action." Id. at 173, 180.

2. Analysis

Plaintiff alleges that she was terminated in retaliation for a September 16, 2003 email that she sent to the CPLP partners. The email included a link to an article about female lawyers' participation in patent trials. (Pl. Ex. JJ.)[41] Plaintiff's email stated that

> CPLP is undoubtedly behind the times. All the women litigators in this firm, regardless of their level of experience or talent, have been relegated to non-partnership track support roles, thus limiting their career development as well as their ability to undertake substantive trial work. I question whether this is really in the long term best interests of the firm's litigation practice . . . .

(Id.) CPLP fired Plaintiff two days later, on September 18, 2003.

1. Prima Facie Case

Plaintiff establishes a prima facie case of retaliation.

a. Protected Activity

_____

[41] Plaintiff's email described the article as "deal[ing] with the fact that there are still very few women who are first or second chair in patent trials, but that law firms who have substantial patent litigation practices are now waking up to the fact that it is no longer in their best interests not to have women litigators who have sufficient experience to be at least second chair at trial." (Pl. Ex. JJ.)

Considering the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's email to the CPLP partners constitutes a protected activity.  A protected activity consists of an "action taken to protest or oppose statutorily prohibited discrimination."  Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).  "[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection," and that "making complaints to management" constitutes a protected activity.  Id. (internal quotation marks and citation omitted).  Furthermore, "[a] plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a 'good faith, reasonable belief that the underlying employment practice was unlawful' under that statute."  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1988) (internal citation omitted).

Plaintiff's email was a complaint to CPLP partners about the treatment of female litigation associates.  Because Plaintiff's email specifically complained about CPLP's treatment of female associates, the Court concludes that the email constitutes a "report and protest [of] workplace discrimination."  Lyte v. S. Cent. Conn. Reg'l Water Auth., 482 F. Supp. 2d 252, 268-69 (D. Conn. 2007); cf. Moncrief v. N.Y. Pub. Library, No. 05 Civ. 2164, 2007 WL 2398808, at *6 (S.D.N.Y. Aug. 17, 2007) (granting summary

judgment when the alleged complaint was "bereft of any talk about discrimination at all and thus can not be deemed a protected activity."). The Court also concludes that a reasonable jury could find that Plaintiff possessed a good faith and reasonable belief that CPLP's activities violated Title VII. A reasonable jury could find that Plaintiff's belief was held in good faith if it credits her testimony regarding her perception of CPLP's practices. A reasonable jury could conclude that Plaintiff's belief was reasonable if, for example, it credits evidence that she was discriminated against in promotions and the distribution of work. Thus, the Court concludes that Plaintiff establishes that she engaged in a protected activity.[42]

### b. Defendant's Knowledge of the Protected Activity

It is undisputed that CPLP knew about Plaintiff's email. Plaintiff sent the email to all CPLP partners. On September 17, 2003, prior to Plaintiff's termination, Pavane forwarded Plaintiff's email to CPLP's office manager, with a note that the email should be placed in Plaintiff's file. (See Pl. Ex. KK.) Thus, Plaintiff establishes the second element of her prima facie case.

---

[42] Defendant argues that Plaintiff fails to satisfy this element of her prima facie case because "forwarding a magazine article" does not constitute a protected activity. (See Def. Mem. 19.) This argument misrepresents Plaintiff's email. Plaintiff's email not only forwarded an article, but also directly criticized CPLP's practices.

### c. Adverse Employment Action

It is undisputed that Plaintiff suffered an adverse employment action, because CPLP terminated Plaintiff on September 18, 2003.

### d. Causal Connection

Plaintiff establishes a causal connection between her email complaining about discrimination and her termination.  "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus."  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  Plaintiff provides both circumstantial and direct evidence of retaliation.

First, the fact that CPLP fired Plaintiff less than two days after she complained about sex discrimination is strong circumstantial evidence of retaliation.  See Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001) ("In this circuit, a plaintiff can indirectly establish a causal connection . . . by showing that the protected activity was closely followed in time by the adverse [employment] action.").

Second, Plaintiff submitted direct evidence that Pavane, the CPLP managing partner who participated in Plaintiff's termination, held retaliatory animus toward Plaintiff.  During his deposition, Pavane testified that he thought Plaintiff's

email was "obnoxious," that he was "angered" by it, that it was "just a ranting of somebody who is looking to set you up for a litigation," and that she was "trying to piss everybody off." (Pavane Dep. 189-91.)  A reasonable jury could find that these statements show that Pavane wanted to retaliate against Plaintiff for her complaint.  Thus, Plaintiff establishes a causal connection between her September 16, 2003 email and her termination.

### 2. Defendant's Non-Retaliatory Reason

Because Plaintiff establishes a prima facie case of discrimination, the burden shifts to CPLP to provide a non-retaliatory reason for Plaintiff's termination.  CPLP meets this burden.  CPLP asserts that it terminated Plaintiff in response to a series of emails she wrote to the partners and staff on September 18, 2003, which CPLP characterizes as "insulting and unprofessional."  (See Def. 56.1 ¶ 13.)  CPLP characterizes these September 18, 2003 emails as the "final straw" in its decision to terminate Plaintiff, and presents evidence that Plaintiff had a long history of poor performance at CPLP.  (See Def. 56.1 ¶ 12; see also Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985).) Accordingly, CPLP's explanation constitutes a legitimate non-retaliatory reason for Plaintiff's termination, and the burden shifts to Plaintiff to present evidence that this reason is pretextual.

3. Pretext

The Court concludes that Plaintiff presents sufficient evidence that Defendant's explanation is pretext for discrimination.

First, Plaintiff points out inconsistencies between contemporaneous emails regarding Plaintiff's termination sent by the CPLP partners and deposition testimony by Pavane and Alper. A reasonable jury could find that these inconsistencies draw into question CPLP's non-retaliatory explanation for Plaintiff's firing. For example, Alper testified at his deposition that he had been "very reluctant" to terminate Plaintiff until she sent a 3:01 p.m. email to the paralegals on September 18, 2003. (Alper Dep. 125.) However, the email record indicates that Alper argued that Plaintiff should be fired in a 12:58 p.m. email on that same date. Likewise, Pavane testified that he had not been in the "let's fire [Plaintiff] camp" until after she sent the 3:01 p.m. email to the paralegals. (Pavane Dep. 170.) However, the email record indicates that Pavane concurred with Alper's suggestion to fire Plaintiff in a 1:00 p.m. email, two hours prior to Plaintiff's email to the paralegals.[43] These inconsistencies

_____

[43] Defendant argues that these inconsistencies are due to the three year gap between the email exchange and the depositions, and because Pavane and Alper did not review the email exchange prior to their depositions. (See Def. Ctr. 56.1 ¶¶ 14-15.) CPLP further asserts that the entire sequence of events on September 18, 2003 led to Plaintiff's termination. (Id.) Defendant's explanation for these inconsistencies requires credibility

51

could support a finding that CPLP's reasons for firing Plaintiff were pretextual. See Aneja v. M.A. Angeliades, Inc., No. 05 Civ. 9678, 2008 WL 918704, at *7 (S.D.N.Y. Mar. 31, 2008) ("A jury issue on the question of pretext may be created when an employer offers inconsistent and varying explanations for its decision to terminate a plaintiff.").

Second, a reasonable jury could find that the evidence of a causal connection set forth in Plaintiff's prima facie case, including Pavane's deposition testimony expressing hostility towards Plaintiff's September 16, 2003 discrimination complaint, establishes that the real reason for Plaintiff's termination was retaliation.

Accordingly, the Court concludes that summary judgment is inappropriate with respect to Plaintiff's retaliation claim.

IV. Conclusion

For the reasons stated above, Defendant's motion for partial summary judgment is granted in part and denied in part. (D.E. 30.)  The following claims remain for trial: (1) Plaintiff's work assignment claim under Title VII and state and city law; (2) Plaintiff's 2002 promotion claim under state and city law; (3) Plaintiff's 2003 promotion claim under Title VII and state and city law; (4) Plaintiff's retaliation claim under Title VII and

determinations that are inappropriate at the summary judgment stage.

52

state and city law; and (5) Plaintiff's contract claim. No later than August 16, 2008, the parties shall submit a joint pre-trial order. The pre-trial order shall conform to the Court's Individual Practices, a copy of which may be obtained from http://www1.nysd.uscourts.gov/judge_info.php?id=35.

This case is deemed Ready for Trial August 16, 2008.[44]

SO ORDERED

Dated:   New York, New York
         July **30** , 2008

*Kimba M. Wood*

Kimba M. Wood
United States District Judge

---

[44] At any time after the Ready Trial Date, the Court may call the parties to trial upon forty-eight hours notice. No adjournment of that trial date will be permitted, unless counsel has faxed to chambers an affidavit stating that he or she is engaged in trial in another court. This affidavit shall include: (1) the caption of the other case, including its index number; (2) the expected length of the trial; (3) the court in which the other case is to be tried; and (4) the name and telephone number of the judge presiding over the case. Counsel shall notify the Court and all other counsel in writing, at the earliest possible time, of any particular scheduling problems involving out-of-town witnesses or other exigencies.